UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHIRLENE B. MCCOLLUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-261 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 15, 2009, Plaintiff, Shirlene Mccollum ("McCollum"), filed her complaint with

this Court.  On October 23, 2009, McCollum filed her opening brief asking this Court to enter

judgment in her favor or remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g).

On January 29, 2010, Defendant, Commissioner of Social Security, Michael J. Astrue

("Commissioner"), filed a response in opposition.  On February 11, 2010, McCollum filed a

reply.  This Court now enters the following opinion pursuant to the consent of the parties and 28

U.S.C. § 636(c).

I.      PROCEDURE

On May 17, 2005, McCollum filed an application for disability insurance benefits

alleging disability beginning October 15, 2004.  The claim was initially denied on August 18,

2005, and upon reconsideration on October 26, 2005.

On August 20, 2008, an administrative law judge ("ALJ") filed a decision denying

McCollum's application for benefits.  The ALJ found that McCollum had not engaged in

substantially gainful employment since October 15, 2004, the alleged onset date of the disability.

The ALJ also found that McCollum was severely impaired by major depression with psychotic

features, back impairment, and nerve damage to the right lower extremity. Considering these impairments, the ALJ found that from June 21, 2005 through October 12, 2006, McCollum was disabled. However, the ALJ then found that as of October 13, 2006, McCollum had regained the residual functional capacity ("RFC") to perform sedentary work that existed in the national economy in significant numbers. As result of these findings, the ALJ found that McCollum was no longer disabled as of October 13, 2006.

McCollum filed a request for review of the ALJ's opinion with the Social Security Appeals Council on October 6, 2008. On April 15, 2009, the Appeals Council denied McCollum's request, making the ALJ's determination the Commissioner's final opinion. On June 15, 2009, McCollum filed an appeal with this Court seeking summary judgment as to her claims or a remand of the ALJ's determination for reconsideration. This Court may enter the following opinion and order pursuant to 28 U.S.C. § 636(c) and the consent of the parties.

II.     ANALYSIS

A.     Facts

McCollum was fifty-three at the time of the hearing regarding her disability benefits. She stood 5'8" and weighed approximately 235 pounds. She is a high school graduate and has one year of college education. Her past relevant work includes jobs as a hospital switchboard operator, a PBX operator and registrar, a receptionist, and a customer service representative. McCollum has not performed substantial gainful activity since October 15, 2004.

On June 17, 2005, McCollum met with Theodore Brown, Ph.D. for consultation regarding mental and emotional disorders. McCollum reported difficulty sleeping due to back pain and waking voices. McCollum also reported crying spells, thoughts of suicide, unhappiness

in her marriage, irritability, low energy, and no interest in her husband. McCollum suffered from anxiety attacks which occurred on a weekly basis prompted by crowns, closed places, and stress and characterized by heart palpitations, sweating, trembling, hyperventilation, dizziness, and nausea. Dr. Brown diagnosed McCollum with major depressive disorder with psychotic features, pain disorder associated with a general medical condition, and panic disorder, as well as back pain, migraines, high blood pressure. He gave McCollum a fair prognosis with assistance. On July 6, 2005, McCollum began counseling and treatment for her mental and emotional disorders.

On July 27, 2005, McCollum received a consultative examination from Dr. Shuyan Wang. Dr. Wang determined that McCollum was suffering neuropathy in the right leg because of back problems, with decreased sensations of stabbing and throbbing pain in the right leg and foot. Dr. Wang noted that McCollum was receiving treatment for neuropathy. Dr. Wang observed that McCollum had a limited range of motion in the lumbar spine, and decreased sensation to light touch and pinprick in the right leg and foot, as well as, difficulty walking on her toes and heels. Dr. Wang also observed that McCollum could only stand on her right leg for about one second before the leg gave out. She also showed a limited ability to perform a squat. Dr. Wang opined that McCollum would be able to work for eight hours in a day provided that she was sitting with periodic changes to a standing or walking position, that she could lift five pounds frequently and ten pounds occasionally. Dr. Wang also determined that McCollum would need to avoid dusty environments.

On September 30, 2005, Dr. Michael Jones, McCollum's treating physician, assessed McCollum's RFC. Dr. Jones noted decreased sensitivity in the right leg, significant pain in the

lumbar spine and neuropathic pain in the right leg. Dr. Jones also noted that McCollum's conditions affected her gait and the range of motion and flexion of the lumbar spine, as well as her ability to raise her leg to the side. Dr. Jones reported that McCollum's pain and medication affected her concentration and attention. Dr. Jones opined that McCollum would be able to sit for two hours and stand for two hours in an eight hour day, requiring five-minute periods of walking every ninety minutes. Dr. Jones also determined that McCollum could lift ten pounds occasionally. Finally, Dr. Jones stated that McCollum's impairments would require her to miss work for more than four days in a month.

On August 11, 2005, Dr. W. Shipley, a state agency physician, reviewed the record and determined that McCollum had the mental RFC to complete simple, repetitive, work-related tasks on a sustained basis without the need for special considerations. On October 25, 2005, Dr. F. Kladder affirmed Dr. Shipley's opinion.

On October 18, 2005, Dr. Jones treated McCollum for pain, swelling and weakness in the left knee. Dr. Jones also observed osteoarthritis. On January 31, 2006, Dr. Jones noted bilateral shoulder pain, insomnia, neuropathy, dysthymia, hypertension, and osteoarthritis.

On October 12, 2006, McCollum visited her counselor. McCollum stated that she was doing well. Elizabeth Stephens, McCollum's counselor, noted that McCollum's mood remained stable and that she was getting along well. Stephens indicated that McCollum's affect was within normal limits and that her behavior was calm. McCollum discontinued counseling in December 2006.

On August 24, 2006, McCollum's new treating physician, Dr. William Hoover, noted that McCollum had chronic back pain. On January 31, 2007, Dr. Hoover noted bilateral

shoulder pain, chronic depressive disorder, neuropathy, osteoarthritis, hyperlipidemia, and joint pain in the shoulder, but also noted that all of these conditions were under control because of treatment, with the exception of McCollum's right shoulder pain. Dr. Hoover observed osteoarthritis in the right shoulder and prescribed treatment. Otherwise, Dr. Hoover observed McCollum to be normal. On May 2, 2007 Dr. Hoover noted pain in the lumbar spine that worsened with sitting or standing too long. On July 27, 2007, Dr. Hoover noted a new diagnosis of Type II Diabetes, and all the other conditions remained the same, including neuropathy and osteoarthritis. McCollum received similar reports and diagnoses from Dr. Hoover on August 24 and November 6, 2007. Adding to the November 7, 2007 report, Dr. Hoover opined that McCollum's pain and medication would frequently interfere with her attention and concentration. Dr. Hoover indicated a poor prognosis. He also opined that McCollum would be able to sit for two hours and stand or walk for two hours in an eight hour work day. In Dr. Hoover's opinion, McCollum would require the option to sit or stand and take unscheduled, five-minute breaks every hour. Dr. Hoover determined that McCollum's condition would likely cause more than four absences from work every month.

At the hearing on February 8, 2008, McCollum testified that she last worked in October 2004 and left her job to move and marry her husband. She testified that she had three lower back surgeries and neuropathy in her right leg. She stated that she had arthritis in her left leg and right shoulder. She also testified that since her move to Indiana, her memory had worsened because of medication. When asked for an example of her poor memory and concentration, McCollum stated that she could not remember a conversation that she had in the car immediately before the hearing. McCollum stated that she had difficulty answering her husband in conversation and had

to really concentrate on what he said in order to respond. McCollum testified that she had difficulty with directions while driving.

On August 20, 2008, the ALJ rendered a partially favorable decision finding that McCollum was disabled during the period from June 21, 2005 through October 13, 2006. The ALJ found that McCollum was severely impaired by major depression with psychotic features, back impairment, obesity, and nerve damage in the right leg. However, the ALJ did not find that McCollum's impairments met any of the listed impairments, and that she was no longer disabled. Ultimately, the ALJ found that, beginning October 13, 2006, McCollum regained an RFC sufficient to perform sedentary work, which existed in significant numbers in the economy.

B.       Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C.       McCollum's Motion for Summary Judgment

To be entitled to benefits under the Social Security Act, McCollum must establish that

she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability"

as the:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test

for determining whether a claimant is disabled.  The ALJ must consider whether: (1) the

claimant is presently employed; (2) the claimant has a severe impairment or combination of

impairments; (3) the claimant's impairment meets or equals any impairment listed in the

regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's

residual functional capacity leaves her unable to perform her past relevant work; and (5) the

claimant is unable to perform any other work existing in significant numbers in the national

economy.  20 C.F.R. §§  404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his

determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a

finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the

severe impairments listed in the regulations, the impairment is acknowledged by the

Commissioner.  See 20 C.F.R. §  404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, §  404.

However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional

capacity, which in turn is used to determine whether the claimant can perform her past work

under step four and whether the claimant can perform other work in society under step five.  20

C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the

burden shifts to the Commissioner at step five. Id.

The issues this Court must resolve are: (1) whether the ALJ made an erroneous RFC finding; (2) whether the ALJ made a proper credibility finding; and (3) whether the ALJ erred in his determination that McCollum could perform work found in significant numbers in the national economy.

1.     The ALJ's RFC determination is supported by substantial evidence

McCollum aruges that the ALJ made an erroneous RFC finding because he improperly weighed the evidence. Specifically, McCollum argues that the ALJ failed to consider her treating physicians' opinions and failed to perform a proper physical RFC assessment. McCollum also argues that the ALJ failed to perform a mental RFC before determining that McCollum was not disabled.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972).

McCollum argues that the ALJ improperly disregarded Dr. Jones' September 2005 RFC questionnaire and Dr. Hoover's November 2007 RFC questionnaire that stated that McCollum was unable to perform even sedentary work due to the side effects of her pain medication. In his determination, the ALJ rejected these opinions because they were based on McCollum's

8

subjective complaints rather than objective medical evidence. Rather, the ALJ gave deference to Dr. Wang, the consultative examiner, who performed a physical RFC assessment with McCollum in July 2005 to determine her capabilities. Dr. Wang opined that McCollum was able to perform sedentary work based on the results of the examination. The ALJ also relied on the January 2007 report of Dr. Hoover that stated that McCollum's chronic conditions were under control and that she was physically normal. The ALJ was entitled to rely on the opinion of Dr. Wang and the January 2007 report of Dr. Hoover. As a result, this Court finds that the ALJ's physical RFC finding is supported by substantial evidence.

McCollum also contends that the ALJ failed to make any mental RFC determination for the periods before June 21, 2005 and after October 12, 2006. The ALJ determined that McCollum was unable to work from June 21, 2005 to October 12, 2006 because of severe mental impairments as evidenced by a mental status examination on June 21, 2005, in which the doctor determined that McCollum was hearing voices and suffering anxiety attacks. The ALJ noted that on October 12, 2006, a medical treatment progress note showed that McCollum had improved and that she was no longer hearing voices or suffering anxiety attacks. The ALJ stated that prior to the examination of June 21, 2005, and after the treatment update on October 12, 2006, there was no evidence of severe mental impairments. Thus, this Court finds that the ALJ supported his mental RFC determination with substantial evidence.

Because the ALJ's physical and mental RFC determinations were supported by substantial evidence, this Court finds that the both determinations are proper.

      2.      <u>The ALJ's credibility determination is supported by substantial evidence.</u>

McCollum contends that the ALJ made an improper credibility finding because it is

vague, erroneous and not supported by substantial evidence. Specifically, McCollum argues that

the ALJ should have articulated his consideration of the factors listed in S.S.R. 96-7p, including

the claimant's daily activities, the intensity of the claimant's pain and other symptoms, any

factors that aggravate the claimant's symptoms, the side effects of the claimant's symptoms, and

other methods the claimant uses to treat the symptoms, and anything else that affects the

claimant's functional limitations. McCollum argues that the ALJ did not consider these factors

and only included a brief articulation of the reasons for his credibility determination, which

reads:

> She is not an entirely credible witness. First of all she alleges disability beginning
> October 15, 2004, but she did not quit her job because of any physical or mental
> problems, but rather to move and get married. Also, she says she still needs mental
> health services when she agreed with her release at that time. In addition, she
> testified to a less than sedentary daily life while there is nothing in the evidence to
> warrant the necessity for such a lifestyle.

 See Tr. 27.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his

credibility determinations are given special deference, and as a result, his credibility

determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d

209, 213 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); see also

Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact

grounds his credibility finding in an observation or argument that is unreasonable or

unsupported. . . can the finding be reversed."). However, as a bottom line, Social Security Ruling

96-7p requires an ALJ to consider the entire case record and articulate specific reasons to

support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003);

Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a

"complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 96-7p.

The ALJ was not required to provide a written evaluation of every piece of testimony and evidence presented at the hearing. However, the ALJ did articulate his reasons for not finding McCollum credible. First, the ALJ noted that when McCollum left work, she did not quit for medical reasons. He based this finding on the testimony that McCollum gave at the administrative hearing. Second, the ALJ noted that although McCollum alleged a continuing need for mental treatment, he found that her voluntarily cessation of mental health services showed that this allegation was not founded. Further, the ALJ noted that after the favorable prognosis given on October 12, 2006, there was no evidence of severe mental limitations, bolstering his determination that McCollum no longer needs mental health services. Because the ALJ has based his credibility determination on McCollum's testimony, this Court finds that the ALJ's credibility determination is supported by substantial evidence and is not vague or erroneous as McCollum contends.

        3.      The ALJ did not err in his determination that McCollum could perform work found in significant numbers in the national economy.

Finally, McCollum contends that the ALJ erroneously determined that McCollum could perform jobs that exist in significant numbers in the national economy. Specifically, McCollum argues that the ALJ erred in his classification of McCollum's past work by stating that the work she did was at the sedentary level but still incorporated the lifting requirements of the light

exertion level.  In addition, McCollum argues that the ALJ failed to perform a "function-by-function assessment" of McCollum's past relevant work.

At step four of the ALJ's analysis, the ALJ must determine if the claimant still has an RFC that permits her to perform her past relevant work.  20 C.F.R. § 404.1520(e).  In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities.  Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984). The ALJ can "base his comparison on the functional demands and job duties of the applicant's past occupation as generally required by employers throughout the national economy." Orlando v. Heckler, 776 F.2d 209, 215-16 (7th Cir.1985).  Further, an applicant who "cannot perform the excessive functional demands and or job duties actually required in the former job but can perform the functional demands as generally required by employers throughout the economy" should not be found to be disabled.  Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2003).

McCollum argues that the ALJ erred in his determination that McCollum could perform her past relevant work as a switchboard operator.  McCollum argues that the position of switchboard operator should have been classified as light work, instead of sedentary work, based on the lifting requirements of the job.  McCollum further contends that because of that error in the consideration of the lifting requirements, she would not be able to perform her past relevant work as the ALJ determined.  This Court notes that the ALJ did not thoroughly explain his reasoning for his determination that McCollum's past relevant work was classified as light work. However, that omission is not harmful error because McCollum testified at the administrative hearing that she only lifted packages of paper and nothing more. See Tr. 496.  As she performed

12

the work of switchboard operator, the work would be classified as sedentary. See 20 C.F.R. §

404.1567(a). Thus, the ALJ's determination that the position of switchboard operator was

classified as sedentary as performed by McCollum is supported by substantial evidence.

McCollum also contends that the ALJ must perform a "function-by-function" assessment

of McCollum's capacities compared to the demands of the level of exertion required by the job.

S.S.R. 96-8p. However, the ALJ need not provide a written analysis of every piece of evidence

or testimony. Rice, 384 F.3d at 370. The ALJ is only required to build a logical bridge from the

evidence to his conclusion. Haynes, 416 F.3d at 626. The ALJ did indeed discuss McCollum's

capacities and found that she had the ability to perform sedentary work activity before June 21,

2005 and after October 12, 2006. See Tr. 26-27. In making this determination, the ALJ relied

on the opinions of Dr. Wang, an examining physician, who stated that McCollum would be able

to "work eight hours a day seated or standing with walking, with only thirty minutes standing

and walking each hour because of back pain, along with periodic changes in sitting." See Tr. 25.

As discussed above, the ALJ also determined that this was the only level of exertion required by

her past relevant work. Because the ALJ supported his determination with substantial evidence

on the record, this Court finds that the ALJ did not err in his discussion of McCollum's

limitations and capacities as compared with her past relevant work.

Therefore, this Court finds that the ALJ did not err in his determination that McCollum

could perform her past relevant work, and that determination is supported by substantial

evidence.

III.    CONCLUSION

For the above reasons, this Court concludes that the ALJ's determination of McCollum's

RFC is supported by substantial evidence in the record and supported by a sufficiently

articulated analysis by the ALJ.  Similarly, this Court concludes that the ALJ provided

substantial evidence and sufficient articulation in support of his credibility determination.

Finally, this Court concludes that the ALJ's determination that McCollum could perform her past

relevant work is supported by substantial evidence and not erroneous.  Therefore, McCollum's

motion for reverse or remand is **DENIED**.  [Doc. No. 1].  The Clerk is instructed to term the

case and enter judgment in favor of the Commissioner.

     **SO ORDERED.**

     **Dated April 1, 2010**.


       S/Christopher A. Nuechterlein
       Christopher A. Nuechterlein
       United State Magistrate Judge